UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN OROZCO and JUAN OROZCO-BRISENO, on behalf of themselves and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ILLINOIS TOOL WORKS INC., a corporation, and DOES 1 through 50 inclusive,<br><br>Defendant. | No.  14-cv-02113-MCE-EFB<br><br>**ORDER AND MEMORANDUM** |

This putative class action proceeds on Plaintiffs Juan Orozco and Juan Orozco-Briseno's Complaint against their former employer Illinois Tool Works, Inc. ("ITW"). Presently before the Court is Plaintiffs' Motion for Class Certification, ECF No. 85, in which Plaintiffs seek to certify two classes.  For the following reasons, Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART.[1]

///

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  See E.D. Cal. Local R. 230(g).

1

1

2

### BACKGROUND[2]

Plaintiffs are former material processors who worked for the ITW Rippey Corporation ("Rippey"), one of ITW's more than forty business facilities in California. The Rippey facility is ITW's only facility in California that manufactures PVA brush rollers used for cleaning semi-conductors. The manufacturing process for the PVA brush rollers requires material processors at the Rippey facility to wear hazmat-type protective gear. Plaintiffs allege that the hazards of the manufacturing process at the Rippey facility sometimes prevent material processors from taking their scheduled meal and rest breaks.

ITW also owns Kairak, which previously operated a manufacturing facility in California. Plaintiffs never worked at that facility, but allege that Kairak's shop workers were deprived of meal and rest breaks in a manner similar to their experiences at the Rippey facility. Plaintiffs allege that the mealtime policies at the Rippey and Kairak facilities violated California's Unfair Competition Law ("UCL"), and these allegations form the basis of Plaintiffs' proposed UCL Class.

Plaintiffs also allege that wage statements they received from ITW that included overtime pay were legally deficient under California law. They contend that all of ITW's California employees who received overtime pay received the same defective wage statements, and these allegations form the basis of Plaintiffs' proposed Wage Statement Class.

Plaintiffs originally filed suit in state court, but on September 12, 2014, Defendant removed Plaintiffs' First Amended Complaint ("FAC") to this Court pursuant to its diversity jurisdiction. ECF No. 1. Plaintiffs filed a Motion to Remand, ECF No. 6, which was denied, ECF No. 13. Plaintiffs now move for class certification.

---

[2] The following recitation of facts is taken from Plaintiffs' Memorandum of Points and Authorities in Support of the Motion for Class Certification and Defendant's Opposition thereto. See ECF No. 85-1 (Plaintiffs' memorandum); ECF No. 88 (Defendant's opposition).

1

2

**STANDARD**

3    A court may certify a class if a plaintiff demonstrates that all of the prerequisites of

4    Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)

5    have been met.  Fed. R. Civ. P. 23; <u>see also</u> <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d

6    1227, 1234 (9th Cir. 1996).  The trial court must conduct a "rigorous analysis" to

7    determine whether the party seeking certification has established those prerequisites.

8    <u>Id.</u> at 1233.  While the trial court has broad discretion to certify a class, its discretion

9    must be exercised within the framework of Rule 23.  <u>Zinser v. Accufix Research Inst.,</u>

10   <u>Inc.</u>, 253 F.3d 1180, 1186 (9th Cir. 2001).

11       According to Rule 23(a), class certification may be had under the following

12   circumstances:  (1) the class must be so numerous that joinder of all members is

13   impracticable; (2) questions of law or fact exist that are common to the class; (3) the

14   claims or defenses of the representative parties are typical of the claims or defenses of

15   the class and (4) the representative parties will fairly and adequately protect the interests

16   of the class.  <u>See</u> Fed. R. Civ. P. 23(a).  Rule 23(b) requires a plaintiff to establish one of

17   the following: (1) that there is a risk of substantial prejudice from separate actions;

18   (2) that declaratory or injunctive relief benefitting the class as a whole would be

19   appropriate; or (3) that common questions of law or fact predominate and the class

20   action is superior to other available methods of adjudication.  <u>See</u> Fed. R. Civ. P. 23(b).

21

22

**ANALYSIS**

23

24   **A.    The Putative Classes**

25       Plaintiffs define the UCL Class as "[a]ll individuals who are or previously were

26   employed by Defendant . . . in California as non-exempt employees during the period

27   March 27, 2013 to the present who worked at (a) Rippey as Material Processors; or, at

28   (b) Kairak as Shop Workers."  Mem. of P & A in Supp. of Mot. for Class Certification

1   ("Mot. for Class Cert.") at 10.  Plaintiffs allege a violation of the UCL for "unfairly or

2   deceptively" violating meal period requirements imposed by California law.  Mot. for

3   Class Cert. at 16.  Plaintiffs "do[] not ask the Court to find that Defendant violated the

4   meal period laws under the California Labor Code."  Id.  Instead, Plaintiffs allege that

5   "Defendant's system" for providing mealtimes was unfair under the UCL.  Id.

6        Plaintiffs define the Wage Statement Class as "[a]ll individuals who are or

7   previously were employed by Defendant . . . in California as non-exempt employees

8   during the period March 27, 2013 to the present who received a wage statement that

9   reflects a second overtime payment."  Mot. for Class Cert. at 10.  Plaintiffs allege that all

10  members of this proposed class received wage statements that were deficient under

11  California Labor Code § 226, which requires, in part, that "[e]very employer . . . furnish

12  each of his or her employees . . . an accurate itemized statement in writing showing . . .

13  all applicable hourly rates in effect during the pay period and the corresponding number

14  of hours worked at each hourly rate by the employee."  Cal. Labor Code § 226(a).

15       While Plaintiffs' Motion for Class Certification makes no allegations that the wage

16  statements provided by ITW are inaccurate—unlike Plaintiffs' FAC—they allege that the

17  wage statements are not sufficiently clear to satisfy the California Labor Code's

18  requirement that employees be able to "promptly and easily determine from the wage

19  statement alone . . . [t]he amount of gross wages or net wages paid to the employee

20  during the pay period."  Cal. Labor Code § 226(e)(2)(B).  All of ITW's California

21  employees who received "a second overtime payment"[3] are alleged to have suffered this

22  injury, since ITW "used one . . . centralized payroll processing department for all its

23  employees" and used the same format for all its employees.  Mot. for Class Cert. at 3–4.

24  ///

25  ///

26

27      [3] Plaintiffs use this terminology to reference additional payments made to supplement an
    employee's overtime pay when the employee's regular hourly rate has been adjusted by a bonus or other
    special pay during the pay period.  See Mot. for Class Cert. at 5.

28

1

**B.     Defendant's Challenge To The Pleading Of The Wage Statement Claim**

2

Defendant initially challenges certification of the Wage Statement Class by

3

arguing that its underlying claim was not adequately pled.  Def's. Opp'n at 8–11.

4

Plaintiffs' First Amended Complaint ("FAC") contained five causes of action:  (1) unfair

5

competition in violation of the UCL for failing to comply with California break and

6

overtime law; (2) failure to adequately pay overtime compensation; (3) failure to provide

7

sufficient wage statements; (4) failure to pay wages as due; and (5) violation of the

8

Private Attorneys General Act ("PAGA").  FAC ¶¶ 42–89, ECF No. 1-1.  The theory of

9

recovery for the Wage Statement Class falls under the Third Cause of Action, and the

10

theory of recovery for the UCL Class falls under the First Cause of Action.  Plaintiffs

11

have not sought certification of any class to pursue the other three causes of action.

12

Defendant argues that the Third Cause of Action, as pled, is entirely derivative of

13

a cause of action now abandoned by Plaintiffs.  According to Defendant, the FAC

14

alleges the wage statements provided to Plaintiffs were defective because they included

15

incorrect overtime pay calculations.  Def's. Opp'n at 10.  Thus, they argue, the claim is

16

wholly derived from the now-abandoned Second Cause of Action, which alleged a failure

17

to adequately pay overtime compensation.  Id. at 10–11.  Plaintiffs are now making a

18

direct claim that wage statements including overtime pay were legally defective, even if

19

the wages paid were correct.  See Mot. for Class Cert. at 5.

20

Contrary to Defendant's assertions, the FAC does contain a standalone claim of

21

legally deficient wage statements:  "At all times relevant herein, DEFENDANT violated

22

Cal. Lab. Code § 226 in that DEFENDANT failed to provide an accurate wage statement

23

in writing that properly and accurately itemized the effective overtime rates of pay for

24

overtime hours worked . . . ."  FAC ¶ 75.  Accordingly, the claim asserted on behalf of the

25

Wage Statement Class is adequately pled, and Defendant's challenge to certification on

26

this basis is not persuasive.

27

///

28

///

5

1

### C.    Rule 23(a) Requirements

2

#### 1.    Numerosity

3    To meet the numerosity requirement of Rule 23(a), a class must be "so numerous

4    that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Courts have

5    routinely found the numerosity requirement satisfied when the class comprises 40 or

6    more members." Collins v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 300 (E.D. Cal.

7    2011).  However, "[t]he numerosity requirement includes no specific numerical

8    threshold." Andrews Farms v. Calcot, Ltd., 258 F.R.D. 640, 651 (E.D. Cal. 2009) order

9    clarified on reconsideration, 268 F.R.D. 380 (E.D. Cal. 2010).  Rule 23(a)'s "requirement

10   that the class be so numerous that joinder of all members is impractical does not mean

11   that joinder must be impossible, but rather means only that the court must find that the

12   difficulty or inconvenience of joining all members of the class makes class litigation

13   desirable." In re Itel Sec. Litig., 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing Harris v.

14   Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913–14 (9th Cir. 1964)).  Courts have

15   been inclined to certify classes of fairly modest size.  See, e.g., Jordan v. Los Angeles

16   Cty., 669 F.2d 1311, 1319 (9th Cir. 1982) (willing to find numerosity for classes with

17   thirty-nine, sixty-four, and seventy-one people), vacated on other grounds, 459 U.S. 810

18   (1982).

19       The Court finds, and the Defendant does not dispute, that numerosity is met for

20   the Wage Statement Class because it consists of 164 members.  Similarly, the UCL

21   Class is sufficiently numerous because it consists of 102 members (44 Rippey

22   employees and 58 Kairak employees).

23

#### 2.    Commonality

24       Under Rule 23(a)(2), commonality is established if "there are questions of law or

25   fact common to the class."  This requirement is construed permissively and can be

26   satisfied upon a finding of "shared legal issues with divergent factual predicates."

27   Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  In Wal-Mart Stores, Inc.

28   v. Dukes, the Supreme Court clarified:  "What matters to class certification . . . is not the

6

1    raising of common 'questions'—even in droves—but, rather the capacity of a classwide

2    proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation."

3    131 S. Ct. 2541, 2551 (2011) (ellipsis in original).  Even a single common question that

4    meets this criteria satisfies Rule 23(a)(2).  <u>Id.</u> at 2556 n.9.

5                                  **a.      Wage Statement Class**

6           The Court finds that commonality exists as to the claims of the members of the

7    Wage Statement Class.  All members received the same kind of wage statements that

8    Plaintiffs allege are defective.  A classwide proceeding would be more than effective in

9    generating a common answer to whether the kind of wage statement offered by ITW is

10   deficient under California law.

11                                 **b.      UCL CLass**

12          With regard to the UCL Class, Plaintiffs claim there are common questions as to

13   whether Defendant had a "policy of failing to specify a timing requirement for meal

14   periods, failing to provide for a second meal period, and failing to pay premium wages

15   for these violations."  Mot. for Class Cert. at 12.  It is unclear, though, whether a

16   classwide proceeding would generate the kind of common answers that would "drive the

17   resolution of the litigation."  The Rippey employees and Kairak employees operated

18   under different meal policies.  Plaintiffs do not identify any ITW policy that applied to both

19   facilities that would have led to the alleged violations of California law.  And indeed, the

20   unique manufacturing policy at the Rippey plant that allegedly drove Defendant to deny

21   workers their required mealtimes was not present at the Kairak facility.  The Court,

22   though, need not decide whether there is sufficient commonality among the UCL Class

23   because, as described below, the UCL Class fails for lack of typicality.

24                             **3.      Typicality**

25          "The [Rule 23(a)(3)] test of typicality is whether other members have the same or

26   similar injury, whether the action is based on conduct which is not unique to the named

27   plaintiffs, and whether other class members have been injured by the same course of

28   conduct."  <u>Hanon v. Dataprods. Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (citation

                                                     7

1    omitted).  "Under the rule's permissive standards, representative claims are 'typical' if

2    they are reasonably co-extensive with those of absent class members; they need not be

3    substantially identical."  Hanlon, 150 F.3d at 1020.  The Ninth Circuit has found typicality

4    if the requisite claims "share a common issue of law or fact and are sufficiently parallel to

5    insure a vigorous and full presentation of all claims for relief."  Cal. Rural Legal

6    Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990) (citation

7    omitted), amended, 937 F.2d 465 (9th Cir. 1991).

8                                   **a.    Wage Statement Class**

9          Defendant argues that a claim under California Labor Code § 226 requires proof

10   of injury.  Def's. Opp'n at 11–12.  Namely, Defendant argues that individuals can recover

11   only by proving they actually viewed the allegedly defective statements.  Id. at 12.

12   Accordingly, Defendant asserts that Plaintiffs cannot satisfy typicality—they are not

13   typical of those who suffered an injury because they never suffered an injury

14   themselves.  Id. at 12–13.

15         Defendant relies heavily on Holak v. Kmart Corp., No. 1:12-cv-00304-AW-MJS,

16   2015 WL 2384895 (E.D. Cal. May 19, 2015), in support of the notion that a plaintiff must

17   actually view the wage statements to recover under § 226.  However, Holak analyzed

18   § 226 before it was amended in 2013 to define its injury requirement.  It is clear that

19   post-amendment, an injury is established if a wage statement is legally defective.  Cal.

20   Labor Code § 226(e)(2)(B) ("An employee is deemed to suffer injury for purposes of this

21   subdivision if the employer fails to provide accurate and complete information as

22   required by any one or more of the items . . . of subdivision (a) . . . .");  see also Brewer v.

23   Gen. Nutrition Corp., No. 11-CV-3587 YGR, 2015 WL 5072039, at *10 n.4 (N.D. Cal.

24   Aug. 27, 2015) ("Holak is distinguishable on many grounds, but most significantly that

25   the court there . . . found the 2013 Amendment to be a substantive change that was not

26   entitled to retroactive application.").

27         Accordingly, the Plaintiffs' claims are sufficiently typical of the Wage Statement

28   Class's.

8

1

**b.    UCL Class**

2      Defendant argues that Plaintiffs' claims are not typical of any claims the Kairak

3  workers might have because mealtime policies differed between the two plants.  The

4  Kairak workers were subject to a collective bargaining agreement that provided meals

5  would be taken after six hours, rather than the statutory five.  Def's. Opp'n at 6.

6  Furthermore, Defendant argues—and Plaintiffs do not refute—that the claims made on

7  behalf of Kairak workers are barred as a matter of law.  Id. at 17.  "[T]he Industrial

8  Welfare Commission may adopt a working condition order permitting a meal period to

9  commence after six hours of work if the commission determines that the order is

10  consistent with the health and welfare of the affected employees."  Cal. Lab. Code

11  § 512(b).  Just such an order exists for manufacturing employees subject to a collective

12  bargaining agreement:  "In the case of employees covered by a valid collective

13  bargaining agreement, the parties to the collective bargaining agreement may agree to a

14  meal period that commences after no more than six (6) hours of work."  Cal. Code Regs.

15  Tit. 8, § 11010, ¶ 11(a).

16      Accordingly, because Kairak workers were subject to an entirely different

17  mealtime policy, Plaintiffs' mealtime claims are not typical of any that could be brought

18  by Kairak workers.  Because Plaintiffs have not shown that the UCL class members'

19  claims are sufficiently parallel, the motion for certification of this class must be denied.

20

**4.    Adequacy of Representation**

21      "The final hurdle interposed by Rule 23(a) is that 'the representative parties will

22  fairly and adequately protect the interests of the class.'"  Hanlon, 150 F.3d at 1020

23  (quoting Fed. R. Civ. P. 23(a)(4)).  "To satisfy constitutional due process concerns,

24  absent class members must be afforded adequate representation before entry of a

25  judgment which binds them."  Id. (citing Hansberry v. Lee, 311 U.S. 32, 42–43 (1940)).

26  "Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs and

27  their counsel have any conflicts of interest with other class members and (2) will the

28  ///

1   named plaintiffs and their counsel prosecute the action vigorously on behalf of the

2   class?" Id.

3       Defendant does not challenge adequacy of representation, and there is no

4   indication that Plaintiffs or their counsel have a conflict of interest.  Plaintiffs have

5   committed to seeing the litigation to its conclusion, and Plaintiffs' counsel has already

6   been found qualified by this Court in another employment class action proceeding

7   concurrently with this one.  See Culley v. Lincare, 2:15-cv-00081-MCE-CMK, 2016 WL

8   4208567, at *6 (E.D. Cal. Aug. 10, 2016).

9       **D.      Rule 23(b) Requirements[4]**

10          **1.      Predominance**

11      "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

12  sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v.

13  Windsor, 521 U.S. 591, 623 (1997).  "This calls upon courts to give careful scrutiny to the

14  relation between common and individual questions in a case."  Tyson Foods, Inc. v.

15  Bouaphakeo, 136 S. Ct. 1036, 1045 (2016).

16              An individual question is one where members of a proposed
                class will need to present evidence that varies from member
17              to member, while a common question is one where the same
                evidence will suffice for each member to make a prima facie
18              showing [or] the issue is susceptible to generalized, class-
                wide proof.  The predominance inquiry asks whether the
19              common, aggregation-enabling, issues in the case are more
                prevalent or important than the non-common, aggregation-
20              defeating, individual issues.

21  Id. (alteration in original) (citation omitted).

22      Plaintiffs' claim on behalf of the Wage Statement Class is premised wholly on an

23  allegation that the wage statements provided by ITW are deficient under California Labor

24  Code § 226.  To succeed on a claim under California Labor Code § 226, a plaintiff must

25  show (1) that the wage statement an employee received failed to comply with the

26  _____

27      [4] Because the Court already determined that certification of the UCL Class would be improper
    because Plaintiffs failed to show the requisite typicality, only the Wage Statement Class is addressed
    below.

28

1  statutory requirements and (2) that the failure was "knowing and intentional" on the part

2  of the employer.  Cal. Labor Code § 226(e)(1).

3          All of the class members received the same kind of wage statements from ITW.

4  Furthermore, whether the alleged failures of those wage statements to comply with

5  § 226 were "knowing and intentional" requires only a showing that ITW was aware of the

6  format of the wage statements and intended to provide them in that format.  See Willner

7  v. Manpower Inc., 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014).  These common issues

8  form the basis of Plaintiffs' wage statement claim and accordingly the Court finds that the

9  Wage Statement Class fulfills Rule 23(b)'s predominance requirement.

10                    **2.      Superiority of Class Action**

11         Plaintiffs must also establish that the proposed class action is the superior method

12  of resolving the dispute in comparison to available alternatives.  "A class action is the

13  superior method for managing litigation if no realistic alternative exists."  Valentino,

14  97 F.3d at 1234–35.  The Ninth Circuit has recognized that a class action is a plaintiff's

15  only realistic method for recovery if there are multiple claims against the same defendant

16  for relatively small sums.  Local Joint Exec. Bd. Culinary/Bartender Trust Fund v. Las

17  Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001).

18         A class action on behalf of the Wage Statement Class is superior to alternative

19  methods of adjudication.  Individuals likely have little interest in pursuing litigation

20  themselves, especially given potential fears of employment retaliation.  Furthermore,

21  neither the parties nor the Court is aware of any other similar suit pending elsewhere.

22  There also appears to be no reason why concentrating the litigation in this Court would

23  be undesirable.  For the Wage Statement Class, the proposed class action is thus the

24  superior method of resolving the dispute, and the requirements of Rule 23(b)(3) are met.

25  Plaintiffs having shown compliance with Rule 23 are entitled to certification of the Wage

26  Statement Class.

27  ///

28  ///

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Class Certification of the Wage Statement Class is GRANTED, and Plaintiffs' Motion is DENIED without prejudice as to the UCL Class.  ECF No. 85.

IT IS SO ORDERED.

Dated:  November 14, 2016

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE