UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN OROZCO and JUAN OROZCO-BRISENO, on behalf of themselves and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ILLINOIS TOOL WORKS INC., a corporation, and DOES 1 through 50 Inclusive,<br><br>Defendant. | No. 14-cv-02113-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

This putative class action proceeds on Plaintiffs Juan Orozco and Juan Orozco-Briseno's Complaint against their former employer Illinois Tool Works, Inc. ("ITW"). The Court previously certified one of the Plaintiffs' two proposed classes. Mem. & Order, ECF No. 93. The motion was denied without prejudice as to the second proposed class. Presently before the Court is a second Motion for Class Certification, ECF No. 94, in which Plaintiffs seek to certify a modified version of the previously rejected class. For the following reasons, Plaintiffs' current Motion is GRANTED.[1]

///

---

[1] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

# BACKGROUND[2]

Plaintiffs are former material processors who worked for the ITW Rippey Corporation ("Rippey"), one of ITW's more than forty business facilities in California. The Rippey facility is ITW's only California facility that manufactures PVA brush rollers used for cleaning semi-conductors. The manufacturing process for the PVA brush rollers requires material processors at the Rippey facility to wear hazmat-type protective gear. According to Plaintiffs, the hazards of the manufacturing process at the Rippey facility sometimes prevent material processors from taking their scheduled meal and rest breaks. Plaintiffs accordingly contend that the mealtime policy at the Rippey facility violated California's Unfair Competition Law ("UCL"), and these allegations form the basis of Plaintiffs' proposed UCL Class.

# STANDARD

A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met. See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23. Id. at 1233. While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable,

---

[2] The following recitation of facts is taken from Plaintiffs' Memorandum of Points and Authorities in Support of the Motion for Class Certification and Defendant's Opposition thereto. See ECF No. 94-1 (Plaintiffs' memorandum); ECF No. 95 (Defendant's opposition).

(2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a).  Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication.  See Fed. R. Civ. P. 23(b).

## ANALYSIS

Plaintiffs define the UCL Class as "[a]ll individuals who are or previously were employed by Defendant Illinois Tool Works, Inc. . . . in California as non-exempt employees during the period March 27, 2010 to the present who worked at Rippey as Material Processors." Mem. of P & A in Supp. of Mot. for Class Certification ("Mot. for Class Cert.") at 6.  Plaintiffs allege a violation of the UCL based on ITW's "unfair or deceptive failure to pay [the] meal premium" required under California labor law.  Mot. for Class Cert. at 3.  Plaintiffs "do not ask the Court to find that Defendant[s] violated the meal period laws under the California Labor Code." Id. at 2.  Instead, Plaintiffs allege that Defendant's policies for providing mealtimes were unfair under the UCL.  Id.

### A.   Rule 23(a) Requirements

#### 1.   Numerosity

To meet the numerosity requirement of Rule 23(a), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." Collins v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011).  However, "[t]he numerosity requirement includes no specific numerical threshold." Andrews Farms v. Calcot, Ltd., 258 F.R.D. 640, 651 (E.D. Cal. 2009) order

3

clarified on reconsideration, 268 F.R.D. 380 (E.D. Cal. 2010).  Rule 23(a)'s "requirement that the class be so numerous that joinder of all members is impractical does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable."  In re Itel Sec. Litig., 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913–14 (9th Cir. 1964)).  Courts have been inclined to certify classes of fairly modest size.  See, e.g., Jordan v. Los Angeles Cty., 669 F.2d 1311, 1319 (9th Cir. 1982) (willing to find numerosity for classes with thirty-nine, sixty-four, and seventy-one people), vacated on other grounds, 459 U.S. 810 (1982).

      The Court finds, and the Defendant does not dispute, that numerosity is met for the UCL Class because it consists of 44 members.

### 2.  Commonality

      Under Rule 23(a)(2), commonality is established if "there are questions of law or fact common to the class."  This requirement is construed permissively and can be satisfied upon a finding of "shared legal issues with divergent factual predicates."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  In Wal-Mart Stores, Inc. v. Dukes, the Supreme Court clarified:  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  131 S. Ct. 2541, 2551 (2011) (alteration in original).  Even a single common question that meets this criteria satisfies Rule 23(a)(2).  Id. at 2556 n.9.

      Plaintiffs claim there are common questions as to whether Defendant had a "policy of failing to specify a timing requirement for meal periods, failing to provide for a second meal period, and failing to pay premium wages for these violations."  Mot. for Class Cert. at 8.  Conversely, Defendant contends that Plaintiffs' UCL cause of action presents no single question, but instead a multitude of questions about why a particular employee took a meal break when he or she did on any given day.  See Def.'s Opp'n, at

7–8.  Thus, they argue, Plaintiffs' UCL cause of action lacks the commonality required under Rule 23(a)(2).  See id.

However, the particular reasons why any one meal break was delayed are not at issue.  Instead, Plaintiffs claim that Defendant had an unlawful meal break policy, subverting employees' statutory rights to the dictates of the manufacturing process at the Rippey facility.  See Safeway, Inc. v. Superior Court, 238 Cal. App. 4th 1138, 1161 (2015) ("[A] theory predicat[ing] liability on [employer's] alleged practice of never paying meal break premium wages when required, and seek[ing] restitution for the class-wide loss of the statutory benefits implemented by section 226.7 . . . does not necessitate excessive individualized assessments of time punch data or similar inquiries.").

While the reasons for any one delayed meal break may vary, there is a common, predominant question among the Rippey workers as to whether Defendant had a policy or practice that deprived them of their statutory right to opt for a meal break within the first five hours of work.  Defendant's policy required team decisions, made in consultation with their supervisor.  See Def.'s Opp'n, at 8.  Class-wide litigation is apt to generate a common answer of whether that scheme unfairly pressured employees into forgoing their statutory right to a meal break.

### 3. Typicality

"The [Rule 23(a)(3)] test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Hanon v. Dataprods. Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020.  The Ninth Circuit has found typicality if the requisite claims "share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief."  Cal. Rural Legal

///

Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990) (citation omitted), amended, 937 F.2d 465 (9th Cir. 1991).

Defendant challenges the named plaintiffs typicality based on them having "work[ed] solely on Rippey's 12-hour weekend shift" and reported only to one particular supervisor. Def.'s Opp'n, at 11–12. This is in contrast to the weekday shifts, which are 10 hours. Id. at 12. Furthermore, Defendant points to evidence that the weekday shift supervisor placed the timing of meal breaks wholly within the employees' hands. Id. at 12. All material processors at Rippeys were subject to the same policy, though, regardless of whether that policy deprived any particular shift of their statutory rights.

Defendant's arguments address the merits of Plaintiffs' claims, not their typicality. Cf. Stockwell v. City & County of San Francisco, 749 F.3d 1107, 1112 (9th Cir. 2014) (finding analysis of the merits of the plaintiff's claims to be "not a proper inquiry" at the class certification stage). If Plaintiffs were deprived of their statutory right to meal breaks, perhaps it was not because of Defendant's policy, but instead attributable to specific circumstances on the weekend shift. But Plaintiffs are here challenging the meal break policy. And because all material processors were subject to the same meal break policy, named Plaintiffs are sufficiently typical of the class to satisfy the requirements of Rule 23(a)(3).

### 4. Adequacy of Representation

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" Hanlon, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(4)). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." Id. (citing Hansberry v. Lee, 311 U.S. 32, 42–43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id.

Defendant does not challenge adequacy of representation, and there is no indication that Plaintiffs or their counsel have a conflict of interest. Plaintiffs have committed to seeing the litigation to its conclusion, and Plaintiffs' counsel has already been found qualified by this Court. See Mem. & Order, at 9–10.

### B.  Rule 23(b) Requirements

#### 1.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016).

> An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof. The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.

Id. (alteration in original) (citation omitted).

As discussed above in analyzing commonality, Defendant argues that individual questions of why a particular employee took a meal break at a particular time predominate and that class certification is therefore inappropriate. However, Plaintiffs have challenged Defendant's meal policy, which requires no such individualized determination. Plaintiffs need only provide evidence of undue pressure resulting from the team-based, manufacturing-process-informed approach to determining when meal breaks are taken, not individualized evidence as to why any one meal break was taken at any particular time. Thus, Plaintiffs have satisfied the predominance requirement.

#### 2.  Superiority of Class Action

Plaintiffs must also establish that the proposed class action is the superior method of resolving the dispute in comparison to available alternatives. "A class action is the

superior method for managing litigation if no realistic alternative exists." Valentino, 97 F.3d at 1234–35.  The Ninth Circuit has recognized that a class action is a plaintiff's only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums.  Local Joint Exec. Bd. Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001).

The Court finds that a class action on behalf of the UCL Class is superior to alternative methods of adjudication.  Individuals likely have little interest in pursuing litigation themselves, especially given potential fears of employment retaliation.  Furthermore, neither the parties nor the Court is aware of any other similar suit pending elsewhere.  There also appears to be no reason why concentrating the litigation in this Court would be undesirable.  The proposed class action is thus the superior method of resolving the dispute, and the requirements of Rule 23(b)(3) are met.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Class Certification of the UCL Class, ECF No. 94, is GRANTED.

IT IS SO ORDERED.

Dated:  February 16, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE